Clerk, please call the last page. Do you want to turn it back to 2-1-1, Tom Waddell, Assistant Director of the Company? Counsel, please. Good morning, Your Honor, Counsel, and please, the Court. My name is Adam Rettberg, representing the plaintiff, Mr. Waddell, on this case. As you know, there are two injuries in question here, two decisions made by the Industrial Commission, the first of which involves an injury which took place on December 9, 2001, the second involving an injury of August 3, 2003. As to the first injury, the only issue at hand in the hearing was whether an accident had taken place that arose in the course of the hearing and that there had been no such accident. It did so on three bases. The first was that the Petitioner failed to follow the Respondent's reporting procedures with respect to reporting the workplace injury. The second basis was that the Petitioner had not spoken of a work accident when he first met with the company nurse sometime later. And the third reason was that the Petitioner had not made mention to his treating physicians in the immediate aftermath of this injury that it was a work accident. The first is that the Petitioner's testimony is flawed and, in fact, speaks to a different issue altogether. The first, where the arbitrator notes that the Petitioner failed to follow proper reporting procedure, is a question of notice. It's not a question of accident. The Respondent, during its witness testimony, clearly laid out that it was the responsibility of the supervisor to fill out the accident report and, in this case, then, both parties failed to follow the proper reporting procedure. And, in any event, the ---- Was it that simple? I thought that Chris Spears, the Claimant's supervisor, testified that the Claimant never reported any incident to him. Well, he testified that he had no recollection of the Plaintiff ever reporting an incident to him. He also testified that he had no recollection of any of these events. And so to view that as dispositive, that the Petitioner did not, in fact, tell anyone, is, I think, premature. The Petitioner did testify that he told an individual named D.L., whose full name is noted in the record, Darryl Rolanditis, right away after this injury, the supervisor who was apparently on duty at the time. That person was not called to testify by Respondent to give the testimony that Chris Spears did. Did he go and see the nurse on August 3rd? Forgive me, Your Honor, I'm speaking of the first injury, the 2001 injury at this point. I haven't gotten to the second one yet. We can address that at the time if that's okay. The second point in the arbitrator's decision notes that the Petitioner, when he reported to the work nurse, Cheryl Wright, on January 18th, 2002, denied a work accident. That's not the case. The Petitioner, in fact, noted to the nurse that he was appraised by his doctors that this must have happened when he was lifting in the fall. Now, he used the phrase in the fall. The injury took place in December, but it was the previous year. So if anything, that's just a mistake of language there. There's no basis for the arbitrator's statement that the Petitioner denied any knowledge of an injury. The Petitioner did make that known to Ms. Wright. And in any event, again, I think this speaks more to the question of notice than the question of accident. The Petitioner's testimony regarding the accident itself was consistent. And the medical records that he sought treatment immediately following that injury are themselves consistent as well. Finally, the third point was in respect to those medical records where the Petitioner, according to the arbitrator, denied any accident or trauma to the physicians that he saw in the wake of the injury. And while that is at least partially correct, the Petitioner did not specifically make notice of this to his doctors. He did note that the timing lines up exactly every time. At his first visit on December 11th, he notes that it happened a few days ago, lining up precisely with the alleged injury date. At the next visit, he describes that he's recovering from a strain that happened back, again, several days ago. And in each instance past that, the timeline doesn't change. The Petitioner did not, it is unclear whether he said this to the doctor or not. He testified that he did tell the doctors this. The records do not note that. Those records, the makers of those records, the Petitioner, the physicians themselves were not called in to testify as to whether they recalled that testimony or not. So it's unclear whether there was an error made in the medical records. The Petitioner testified that there was, that he told these doctors that he had had a lifting incident at work where he felt that it was a muscle pull or something like that and sought treatment immediately thereafter. So in each of these, each of these bases for the arbitrator's decision, which was adopted by the Commission, do not comport with the evidence. In fact, they comport to the opposite conclusion, that the Petitioner did, in fact, sustain a work injury. He did go and seek treatment immediately and he, after a couple days. And that he did remain consistent in that. And especially once he went and tried to follow the proper reporting procedure, according to his testimony, the Respondent failed to do that. That's beside the point. The issue here is accident, not notice. And we would submit that the arbitrator's basis, anything reporting about the reporting procedure to the Respondent, addresses the wrong issue. Notice was stipulated. So he knew, the claimant knew how to do that. He did know how to do it, Your Honor, yes. And didn't do it. He, his testimony was that he reported it to his immediate supervisor and that they were supposed to take it from there. That supervisor was not called in to testify and, you know, so there's no contradiction on that point. And, you know, whether that supervisor followed the procedure or not, clearly the records did not go to the Respondent. But the Respondent, I would argue, again, that speaks to notice, not to accident. The bulk of the evidence, other than that, indicates that the Petitioner was consistent when he states that he had a lifting incident at work on December 9th and sought treatment thereafter based on it. The second injury took place on approximately August 3rd, 2003. And I say approximately only because there are some indications in the record that the Petitioner certainly did not seek treatment for a number of times, figuring that it was not at the time a serious injury. The arbitrator on the second injury found, again, that there had been no accident arising out of or in the course of employment, this time on two bases. The first is, again, involving the reporting process for reporting the injury at the place of business. Now, this does, I again argue, speak to notice. In this case, however, notice was made an issue by the Respondent. So it is a proper point of contention. Why does it only go to notice? Why can't the arbitrator find that if the claimant never reports to the supervisor there was a work-related accident, never tells the nurse there was a work-related accident, why doesn't it go to the merits of the cause of connection? Well, it would, in fact, I would argue that the inference there would be that the arbitrator found these things to mean the Petitioner was not credible when he said that he was injured. But the arbitrator makes no mention of the credibility of the Petitioner. Surely, if he found the Petitioner incredible, he would have stated so on the record, rather than giving roundabout references to the reporting process, which, again, should be noted that the Respondent didn't properly follow either. The second point for the second injury of 2003 that the arbitrator used to support his decision was that the Petitioner claimed to report this injury to the company nurse when he eventually saw her, and that that was supposedly contradicted by the nurse's testimony and by the contemporaneous medical notes. Again, we would submit that this is not correct. The contemporaneous medical notes are all clear that the Petitioner was adjusting a slide on a tank with his arm at work and began experiencing pain in his right arm, his right neck, his right thumb. And who made those notes? Dr. Johnson at Carle Clinic in the evaluation of December 1, 2003. We skipped over something. Didn't Nurse Wright testify that she was the company nurse in August of 2003? And she testified that the claimant did not come in to see her at any time complaining of an injury. Well, that's correct. And the Petitioner did not claim that he did try to go in and see her at that time. The Petitioner testified that at the time he wasn't he was going to try to work through the pain, you know, figuring that it would fade. It did not. And at the time that he finally felt it was necessary to seek medical treatment, he did so and gave a consistent history. The report from Carle Clinic on December 1st states specifically exactly what the Petitioner testified. So even though he knows the procedures and had followed them before, in this instance, he just decided that he was going to work through the pain and not bother telling her? Well, you know, certainly he's not required to seek treatment right away or to report a work accident immediately. It's his, you know, the Petitioner in this case, perhaps foolishly in retrospect, did not immediately report the work injury at the time. But he did attempt to continue working and hoping that the pain, that the symptoms would fade over time. Sometimes they do. Certainly you can have a day at work where you go home, you're feeling achy, and then in a couple days it resolves itself. Why did he wait until five months later to fill out the exit? Well, he waited until the first report of medical treatment that he sought was of November 11th, 2003, at the Carle Clinic, where he reported that he was hurt in August of 2003, pulling a slide. So there's a consistent. He didn't fill out the report of work until January, correct? That's correct. He went in at that point, and I would argue that now we're talking about a definite notice issue because whether he filled out the report doesn't speak to accident nearly as clear as it would speak to when the Respondent was aware that this injury had taken place. And, in fact, there are indications in the record that the Respondent was aware of this well before the actual date of the report being filled out. Did he claim to provide any ostensible basis why he waited five months to fill out an accident report? The Petitioner in this case, you know, he was trying to work through it for a couple months. That didn't succeed. He went to treatment and treated for several months and then eventually did make a report. This, again, speaks to notice. Now, there's a notice requirement that the Respondent, once they are aware of the facts, has received notice. There are indications in the record, and the dissent by Commissioner Mason makes note of those indications, that the Respondent was aware of this injury and the treatment that had been sought by Petitioner well before the time the accident report was filled. As to the failure to actually get that report filled out, again, the Respondent submitted a report that had no date on it, that had no signature of a supervisor on it. It's not clear entirely why they didn't follow their policy either. And Mr. Sears and Ms. Wright were not able to testify as to that. Finally, on that point, to the extent that that informed the Arbitrator and the Commission's decision, the Respondent made no showing that this late notice prejudiced them in any way, which is a clear requirement of the Act. So to the extent that this decision rests on that reported failure of notice, the Respondent has not fulfilled its burden, as put down by the Act, to show that that late notice, if it was late, caused them any prejudice. And this is a clear requirement. And so the evidentiary basis for overturning the Commission's decision specifically is what? It would be a manifest wait here, because the question of whether the accident occurred would be a question of fact. We would submit that all the evidence specifically, and since we're talking about the second injury now, the medical evidence clearly states that the Petitioner gave a very consistent history to his treating providers. And once he spoke to the company, they gave the same exact history. There's not a contradiction there. The Arbitrator denied this based on the delay, which goes to the notice question, which in that case would enter questions of law, whether the notice deficiency, if any here, rose to the level to be a barge of recovery. We would submit that it did not. Thank you, Your Honor. Thank you, Counsel. Counsel, please. May it please the Court, Counsel Ken Riefstack from Thomas-Farmer and Hoy on behalf of Quaker. Keep your voice up, please. Certainly, Your Honor. In this case, the Justice's last question is the one that obviously we focus on in these questions, and that was whether the conclusion of the Arbitrator and the Commission in this case was against the manifest wait of the evidence. We would submit that that's a difficult burden, and in the matters, both accidents here, that there is ample evidence in the record to support the decisions of the Arbitrator and the subsequent approval by the Commission and by the circuit court. With respect to the December 9, 2001 accident, the first accident, if you will, Counsel adequately pointed out in his argument the basis of the Arbitrator's decision in that it failed, a petitioner failed to report the accident, even though he knew how to do so, that he denied that he suffered a work injury when reporting to the nurse for the purpose of obtaining short-term disability and the denial of any accident or trauma to his treatment physicians. With respect to the notice and failure to report the accident, I believe the question was pointed out that doesn't that go to the credibility or to the issue of whether an accident even occurred. If you didn't report something, then it could be a reasonable inference that a failure to report means that something occurred and that there may be some recidivist history here. Even if you would ignore the failure to report, I think that in this first accident, the real compelling evidence is that when the petitioner went to the doctor on three separate occasions following the accident, and it's true that he did present to the doctor a couple of days afterwards, as a matter near the time of the accident, but the first time he went, he didn't recall anything unusual. No mention of a work-related accident. The second time that he went, about 10 to 12 days later, there was a history that he was reaching for the alarm clock the night before and suffered some pain in his neck and shoulder. Again, no mention of the history. It was specifically noted by the physician at that time that he had resolved from a previous some type of strain. But again, no mention of the work-related accident. And then on January 1st of 2002, there was an emergency room note and there was no history of trauma. It seems that the petitioner would have us believe that he told everybody in the world about this accident, coworkers, supervisors, whoever, that failed to tell his treating physicians what had happened. And that there's some type of erroneous or misstatements or lack of information in the records and that he shouldn't be penalized for that. Well, the respondent shouldn't be penalized for that either if there's no history of an accident here. Also, with the denial of the accident and trauma of short-term disability plan, that is also important. Petitioner points out in the brief that that's taken advantage of that remedy isn't relevant to the worker's compensation claim. We would submit that it is because it is yet another opportunity for the petitioner to tell someone what happened and that it was a work-related accident and specifically said, nope, it's not work-related in that incident. So the first time we get a version of events, really, that there was some type of work-related accident came from testimony at the hearing. With respect to the second, the later accident in August of 2003, the arbitrator again determined that no accident occurred that arose out during the course of the employment. Again, the failure to report the accident was one of the basis, and the report to the nurse was contradicted. I think that the questions to counsel during his argument hit right to the point here. He knew how to fill out an accident report. There was a delay in treatment of three months. While that in itself doesn't mean that a work-related accident doesn't occur, granted, it is one factor to say that coupled with the fact that he didn't tell anybody or the nurse until January, some five months later, after the alleged accident, it's a factor to say that this didn't occur. So in short, in either accident, there is ample evidence into the record to support the arbitrator's decision that commissions affirmance of that decision, and we would ask that the court here affirm the decision in each case. Thank you. Brinkley. On that final point, counsel describes the evidence for the second injury as ample to say that the injury did not occur. The problem with that is that if we were to postulate that the petitioner was in essence making up that injury and didn't go for several months to seek treatment for it, it's an oddly specific injury to make up. And wouldn't it have behooved him to make up a much more recent injury, knowing what he did about the accident reporting from the previous time and from before? That just doesn't add up. What the evidence points to is that this is a man who started experiencing pain following something at work and thought it would go away, nothing more. It doesn't indicate that he was being duplicative or deceptive in any way. The other thing that I would like to address is that this idea that there's a reasonable inference to that the failure to report these things, the purported failure to report, is evidence that the injury didn't take place. The petitioner, specifically when he went to treatment initially after the first injury, when he noted that he didn't recall anything unusual, according to the doctor, it's because nothing out of the ordinary at work happened. He was doing his normal job, his normal duties, and started experiencing an ache and a pain that overnight and into the next day developed, and he went to treatment. As attorneys and as workers' compensation practitioners, we would certainly know to report that as something usual. And this petitioner went to the doctor and knows only that he was doing everything he normally did and started having this pain. It wasn't until later that it was connected, in his mind, to this injury. So this idea that the inference that the failure to report means there was no injury was a reasonable inference by the arbitrator. And by the commission in upholding that opinion, I think speaks too far. It doesn't give ñ it doesn't have enough basis and isn't supported by other evidence of supposed duplicity. Thank you. Thank you, counsel.